**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER L. PARSON, individually and as Administrator of the estate of MICHAEL MICHAEL PARSON, deceased, BRANDON C. RONDON, an individual, and CATHERINE HYMEL, an individual, | ) ) ) ) ) ) | Case No. 22-cv-3962 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Sharon Johnson Coleman |
| ALLSTATE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Jennifer L. Parson, individually and as Administrator to the Estate of Michael Bradley Parson, her deceased husband, Brandon C. Rondon, and Catherine C. Hymel, filed a five-count amended complaint against Defendant Allstate Insurance Company (Allstate) alleging four counts of breach of contract and one count of negligent infliction of emotional distress. Counts I, II, and V of Plaintiffs' amended complaint are breach of contract claims alleging that Allstate violated its agreement with its own agents by interfering in negotiations regarding the sale of their books of business. Jennifer Parson also alleges a claim against Allstate for negligent infliction of emotional distress in Count IV. Count III of the complaint alleges a breach of contract claim premised on Allstate's unjust termination of Rondon.

Allstate moves to dismiss Count IV under Federal Rule of Civil Procedure 12(b)(6). Allstate also moves to sever Plaintiffs' claims as improperly joined under Federal Rules of Civil Procedure 20 and 21. For the reasons outlined below, both of Allstate's motions are granted in full.

**BACKGROUND**

The Court accepts all well-pled factual allegations contained in Plaintiffs' amended complaint as true when ruling on this Motion to Dismiss. Exclusive Agency Owners ("Agents") contract with Allstate under the Exclusive Agency Agreements ("EA Agreement") to sell insurance on behalf of Allstate in exchange for commissions and the ability to build a book of business. This book of business, or agency, serves as an alienable asset for Agents. (Dkt. 14 ¶¶ 15–26.) Upon termination of their contract with Allstate, Agents can sell their economic interest in the business to an Allstate-approved buyer within 90 days or receive a termination payment from Allstate. (Dkt. 14 ¶ 27.) The EA Agreement outlines that Allstate's only involvement in the sales process is to approve a buyer and that Allstate maintains broad discretion in the approval or denial of potential buyers. (Dkt. 14 ¶¶ 28–29.) In making approval decisions, Allstate assesses whether the potential buyer is qualified to be an Agent.

Each plaintiff's claim arises from his or her attempt to sell their book of business. Jennifer Parson met with an Allstate representative in October 2019, after Michael Parson was diagnosed with a terminal illness, to inform Allstate of his condition and to inquire about preserving his estate's interest in his agency. No one informed Jennifer Parson at the meeting that any additional documentation might be needed to ensure she would maintain an interest in Michael Parson's agency after his death. On July 31, 2020, Michael Parson passed away. Michael Parson's will specified that Jennifer Parson was his beneficiary for all stock, accounts, and businesses, including his agency. In the coming months, she began to negotiate sale of the agency with a prospective buyer and kept an Allstate representative apprised of her progress. However, Allstate, after requiring additional documentation from Jennifer Parson, did not confirm that Jennifer Parson was the legal representative of Michael Parson's agency and declined to allow her to enter sales negotiations. At this point, the 90-day time period for the sale of the agency was elapsing, and Allstate did not confirm that Jennifer Parson was able to sell the agency, and repeatedly asked her

for additional documentation.  Allstate also informed Jennifer Parson that it intended to deny any sale to her first potential buyer, Gigi Stover.  Allstate then referred Jennifer Parson to an insurance agency broker to facilitate the sale of the agency.  As Jennifer Parson's time to sell the agency was running out, she attempted to contact Allstate numerous times regarding an extension to the 90-day period and about approval of a sale to Gigi Stover.  Allstate ghosted[1] Jennifer Parson, returning the contact on October 27 to inform her that her time to sell the agency had elapsed and that they were closing rhe agency.  Allstate reassigned the agency and awarded Jennifer Parson a termination payment that she alleges was $257,000 less than the market value of her book of business.

Rondon operated an Allstate agency in Oklahoma.  Allstate terminated his contract on March 1, 2021 without stating a reason for the termination.  Because he had been an agent for less than five years, Rondon was not eligible for a termination payment for his book of business.  Allstate gave him 90 days to sell the agency.  Rondon began negotiating a sale to Daniel Arnette, but alleges that Allstate representatives talked Arnette out of purchasing Rondon's agency.  Rondon then learned that he was being investigated by the Oklahoma Department of Insurance because Allstate flagged his license for fraud.  After he contacted the Department, they resolved the allegation and his license was reinstated, and Allstate was fined $15,000 for a frivolous claim.  Rondon ultimately found another Allstate Agent, Tracy Martino, to purchase the agency, but alleges that the purchase price was far less than the book of business was worth.

Hymel began working as an Allstate Agent in Louisiana in 1989.  In 2018, an Allstate representative contacted Hymel and attempted to convince her to sell her agency to another agent, Glenn Liuza; Hymel, then 61, declined, indicating that she did not plan to retire until she was 65.  In 2019, Hymel's field sales leader, Doug Caminita[2], began repeated attempted to convince her to sell

---

[1] *Ghost,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/ghost#h2 (July 2023).
[2] Caminita's name has at least two different spellings in the complaint.  For consistency, the Court adopts the spelling "Caminita."

her agency to another agent, Gina Molinar.  Hymel was skeptical of this, as Molinar was not a licensed agent and was Caminita's girlfriend.  In February 2020, Hymel listed her agency for sale. Hymel found a willing buyer, but Caminita refused to approve the sale.  Hymel contacted Allstate directly.  Neither Allstate nor Caminita followed up to approve the sale, and the potential buyer backed out.  Hymel found another potential buyer, but Allstate denied the buyer because she failed a required Series 6 licensing test.  Hymel alleges, however, that that Allstate later dropped that requirement and allowed the same potential buyer to purchase a different agency.  In December 2020, Allstate informed Hymel it was terminating the contract for her agency because she had not sold policies in 2020, triggering a 90-day period to sell her agency.  Caminita then denied approval of a sale to at least four potential buyers.  When Hymel found a fifth potential buyer, Caminita called the buyer to say Allstate would not approve sale of the agency unless the buyer agreed to maintain the physical office location, and the buyer backed out.  Allstate then told another potential buyer that Hymel's contract with Allstate had been terminated by Allstate, causing him to back out. Hymel then began negotiating with Allstate Agent Adam Levenway regarding the sale of her agency. Hymel alleges that, three weeks before her 90-day window elapsed, Allstate informed Levenway that it would provide him with her agency for free.  Levenway ended negotiations with Hymel and ultimately, Allstate did provide Levenway with Hymel's agency for free after Hymel's 90-day period to sell the agency elapsed.

**LEGAL STANDARD**

A plaintiff must "state a claim to relief that is plausible on its face" in a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A plausible complaint exists when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  The Court will "accept all well-pleaded facts as true and

draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Under Federal Rule of Civil Procedure 20(a), plaintiffs may combine separate claims into the same lawsuit if: (1) their claims arise out of the of the same transaction or occurrence; and (2) there is a question of law or fact that is common to all plaintiffs. FED. R. CIV. P. 20(a). Federal Rule of Civil Procedure 21 dictates that when these parties are improperly joined in a complaint, the Court may sever claims as it deems necessary. FED. R. CIV. P. 21.

## DISCUSSION

The Court will address, in turn, the motions to dismiss and sever.

<u>Motion to Dismiss Count IV</u>

Allstate moves to dismiss Jennifer Parson's negligent infliction of emotional distress ("NIED") claim, arguing that the symptoms she experienced do not suffice to show that she suffered damages from which she can recover. A claim for negligent of infliction of emotional distress must include the traditional elements of a negligence claim including duty, breach, causation, and damages. *Schweihs v. Chase Home Fin., LLC*, 41 N.E.3d 1011, 1018 (Ill. 2016); *Benton v. Little League Baseball, Inc.*, 450 Ill. Dec. 550, 578–79, 181 N.E.3d 902 (1st Dist. 2020). For negligent infliction of emotional distress claims, Illinois law allows recovery for direct victims as well as bystanders, but imposes different rules based on that distinction. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). A direct victim "is someone who suffers harm as a direct consequence of someone's negligence." *Schweihs*, 41 N.E.3d at 1018. "[P]hysical contact of some sort is absolutely necessary to sustain a direct victim negligent infliction of emotional distress action" and manifestations of emotional distress do not suffice. *Benton*, 181 N.E.3d at 932. In this case, Jennifer Parson is a direct victim because she claims to have suffered the emotional distress herself as a result of Allstate's conduct. (Dkt. 14 ¶¶ 181–182.)

5

A direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact. *Rickey v. Chicago Transit Auth.,* 457 N.E.2d 1, 2 (Ill. 1983); *see also Schweihs*, 41 N.E.3d at 1020. Jennifer Parson fails to make such an allegation. Jennifer Parson alleges she suffered sleeplessness, headaches, nervousness, and anxiety stemming from the difficulty in attempting to sell Michael Parson's agency. (Dkt. 14 ¶ 181.) Allstate argues that these symptoms are not sufficient to state a claim for negligent infliction of emotional distress. Indeed, sleeplessness, headaches, nervousness, and anxiety, without more, do not meet the bar for recovery for an emotional distress claim. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 821 (N.D. Ill. 2016) (Castillo, J.). *aff'd*, 845 F.3d 802 (7th Cir. 2017) (disrupted sleep patterns, headaches, mental anguish, depression, and anxiety do not meet the requirements of contemporaneous physical impact for negligent infliction of emotional distress claims); *see also Michalezewski v. CSX Transp., Inc.*, No. 05 C 3363, 2007 WL 2875627, at *7 (N.D. Ill. Sept. 30, 2007) (Coar, J.) ("sleeplessness, discomfort, fear, and regret are exactly the sorts of intermediate effects that consistently fail to meet the high bar of NIED impact.").

Under Illinois law, there is an exception to this rule that allows recovery if medical treatment was sought to address the emotional distress. *Robbins v. Kass*, 114 Ill. Dec. 868, 872, 516 N.E.2d 1023, 1027 (2d Dist. 1987). In this case, Jennifer Parson does not allege she sought medical treatment for her injuries. Her injuries are solely physical manifestations of emotional distress and are thus barred from recovery. Her symptoms of sleeplessness, anxiety, headaches, and nervousness do not meet the requirements to state a claim for negligent infliction of emotional distress. Count IV is therefore dismissed.

Motion to Sever

The Court now assesses whether Plaintiffs' claims are properly joined. To be properly joined, claims must (1) arise out of the same transaction, occurrence, or series of transactions or

occurrences, and (2) contain a common question of fact or law to all plaintiffs. FED. R. CIV. P. 20(a). The Court may also sever any improperly joined claims. FED. R. CIV. P. 21. Plaintiffs allege that their claims are properly joined through a series of common occurrences involving interference by Allstate in the negotiations of agency sales that result in a breach of the EA Agreement. Allstate alleges that these claims do not involve a series of common occurrences and that similar facts found in Plaintiffs' claims are not sufficient for joinder.

Claims arise out of the same transaction or occurrence only if there is a "logical relationship between the separate causes of action." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *see also Estée Lauder Cosms. Ltd. v. P'ships & Uninc. Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 185 (N.D. Ill. 2020) (Chang, J.). A logical relationship exists when there is a "substantial evidentiary overlap in the facts" that give rise to the causes of action. *Estée Lauder*, 334 F.R.D. at 185 (quoting *In re EMC Corp.*, 677 F.3d at 1358). In determining whether a logical relationship exists, courts in this district consider "when the alleged conduct occurred, whether the same parties were involved, similarities of the alleged conduct, and whether the conduct implicated a system of decision-making or widely held policy." *McDaniel v. Chicago Police Dep't*, No. 21-CV-5842, 2022 WL 2316231, at *2 (N.D. Ill. June 28, 2022) (Coleman, J.). District courts have broad discretion on whether to sever a claim. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Courts have held that events occurring at different places and at different times are points in favor of severance, but not dispositive. *Lozada v. City of Chicago*, No. 10 C 1019, 2010 WL 3487952, at *3 (N.D. Ill. Aug. 30, 2010) (Aspen, J.). For instance, claims involving different times, locations, and people can be joined when defendant employees of the same entity are all following a widely-held policy or system of belief. *McDaniel v. Chicago*, 2022 WL 2316231, at *2. Conduct implicating a widely held policy or system of beliefs must be similar for all plaintiffs. See *White v. Coventry Health Care, Inc.*, No. 17-CV-01242, 2018 WL 1469025, at *1 (N.D. Ill. Mar. 26, 2018) (Wood, J.) (denying

7

severance where all plaintiffs were denied medical treatment based on flawed criteria outlined in the Official Disability Guidelines); *Rivera v. Sheriff of Cook Cnty.*, No. 13 CV 4493, 2014 WL 1612569, at *2 (N.D. Ill. Apr. 21, 2014) (Gettleman, J.) (denying severance where all plaintiffs underwent the same unreliable field test which led to wrongful incarceration).

While Plaintiffs concede that their causes of action involve different time periods, different Allstate representatives, and different locations, they argue that their claims ultimately implicate a system of decision making or a widely held policy. Rondon alleges Allstate representatives interfered in agency sale negotiations that took place in Oklahoma from March 2021 to June 2021. (Dkt. 14 ¶¶ 81–99.) Hymel alleges Allstate representatives interfered in agency sale negotiations that took place in Louisiana from December 2020 to February 2021. Jennifer Parson alleges Allstate representatives interfered in agency sale negotiations that took place in North Carolina between August 2020 and October 2020. (*Id.* ¶¶ 100–31.) There is no overlap in either time or place between the claims. Additionally, Plaintiffs do not allege any overlap between the Allstate representatives involved in the claims by each Plaintiff.

Beyond the different time periods, places, and people involved, Jennifer Parson's claims bear almost no factual similarity to Rondon and Hymel's, and it is unclear what the common system of decision-making or widely held policy would be. The fact that Allstate is alleged to have breached the EA Agreement in each case is far too tenuous. And "interference" in agency sales negotiations is also too vague. Whereas Allstate is alleged to have taken active steps to interfere in Rondon and Hymel's negotiations with their potential buyers, it did not interfere in Jennifer Parson's negotiations at all—it allegedly did precisely the opposite here, ghosting her and delaying necessary approvals.

Hymel and Rondon's claims both assert that Allstate took steps to interfere in their agency sales negotiations, in part by contacting potential buyers and dissuading them from carrying out the sale, in violation of the EA Agreement. Superficially, this similarity may suggest an inference that, at

the very least, Allstate representatives were inappropriately communicating with potential purchasers. However, an analysis of the two fact patterns yields little else in common. When supervisors are engaged individualized, discretionary decision-making, rather than systemic or policy-based decisions, then the individual decisions do not arise from the same transaction or occurrence. *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 696-697 (N.D. Ill. 2009) (Norgle, J.). Indeed, the detailed timelines provided by Plaintiffs suggest that Allstate's representatives were engaged in highly discretionary—if perhaps inappropriate and overly personal—decision-making. Plaintiffs do not identify a single plausible and sufficiently specific policy that might underly Allstate's actions in each of the three plaintiff's claims, nor could they. The events in question are simply too disconnected to warrant joinder. And because the Court finds that the first prong of joinder is not met, it need not address whether the claims share a common question of law or fact. Defendant's motion to sever is thus granted in full.

## CONCLUSION

Based on the foregoing, Allstate's Motion to Dismiss Count IV [20] is granted. Allstate's Motion to Sever [20] is also granted in full. The case is thus severed into three separate actions, one for each plaintiff, containing Count I; Counts II and III; and Count V, respectively.

IT IS SO ORDERED.

Date: 8/4/2023

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge